# ORIGINAL

## In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS
No. 03-417V
Filed: May 19, 2014
(Not to be Published)

**FILED**

MAY 1 9 2014

U.S. COURT OF
FEDERAL CLAIMS

```
* * * * * * * * * * * * * * * * * * * * * * * * *
DORTHY OWEN POWELL, parent of MDP,          *
a minor,                                    *
                                            *        Autism; Statute of Limitations;
                Petitioner,                 *        Untimely Filed; Dismissal
                                            *
        v.                                  *
                                            *
SECRETARY OF HEALTH AND                     *
HUMAN SERVICES,                             *
                                            *
                Respondent.                 *
                                            *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

### DECISION[1]

On February 21, 2003, Dorothy Owen Powell ("Petitioner"), on behalf of her son, MDP, filed a claim for compensation pursuant to the National Vaccine Injury Compensation Program ("Vaccine Program").[2] (Petition ("Pet.") at 1-2.)

---

[1] Because this decision contains a reasoned explanation for the action in this case, I intend to post this decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 (2006)). In accordance with Vaccine Rule 18(b), a party has 14 days to identify and move to delete medical or other information that satisfies the criteria in 42 U.S.C. § 300aa-12(d)(4)(B). Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted decision. If, upon review, I agree that the identified material fits within the requirements of that provision, I will delete such material from public access.

[2] The National Vaccine Injury Compensation Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. § 300aa-10 *et seq.* (2006). Hereafter, for ease of citation, all "§" references will be 42 U.S.C. § 300aa (2006). I will sometimes refer to the Act of Congress that created the Vaccine Program as the "Vaccine Act."

Petitioner has the burden to demonstrate that her case was properly and timely filed under the Vaccine Act's statute of limitations. § 16(a)(2). Based on my analysis of the evidence, Petitioner has not met her burden, and thus **this case is dismissed as untimely filed.**

# I

## BACKGROUND - -THE OMNIBUS AUTISM PROCEEDING

This case concerning MDP is one of more than 5,000 cases filed under the Program in which it has been alleged that a child's disorder known as "autism," or a similar disorder, was caused by one or more vaccinations. A brief summary of one aspect of that history is relevant to this Decision.

In anticipation of dealing with such a large group of cases involving a common factual issue--*i.e.*, whether vaccinations can cause autism--the Office of Special Masters ("OSM") devised special procedures. On July 3, 2002, the Chief Special Master, acting on behalf of the OSM, issued *Autism General Order #1*, [3] which set up the OAP. In the OAP, a group of counsel selected from attorneys representing petitioners in the autism cases, known as the Petitioners' Steering Committee ("PSC"), was charged with obtaining and presenting evidence concerning the general issue of whether those vaccines can cause autism, and, if so, in what circumstances. The evidence obtained in that general inquiry was to be applied to the individual cases. (*Autism General Order # 1*, 2002 WL 31696785, at *3.)

Ultimately, the PSC elected to present two different theories concerning the causation of autism. The first theory alleged that the *measles* portion of the MMR vaccine can cause autism, in situations in which it was alleged that thimerosal-containing vaccines previously weakened an infant's immune system. That theory was presented in three separate Program "test cases," during several weeks of trial in 2007. The second theory alleged that the mercury contained in the thimerosal-containing vaccines can *directly affect* an infant's brain, thereby substantially contributing to the development of autism. The second theory was presented in three additional "test cases" during several weeks of trial in 2008.

On February 12, 2009, decisions were issued concerning the three "test cases" pertaining to the PSC's *first* theory. In each of those three decisions, the petitioners' causation theories were

---

[3] The *Autism General Order #1* is published at 2002 WL 31696785, 2002 U.S. Claims LEXIS 365 (Fed. Cl. Spec. Mstr. July 3, 2002). I also note that the documents filed in the Omnibus Autism Proceeding are contained in a special file kept by the Clerk of this court, known as the "Autism Master File." An electronic version of that File is maintained on this court's website. This electronic version contains a "docket sheet" listing all of the items in the File, and also contains the complete text of most of the items in the File, with the exceptions of a few documents that are withheld from the website due to copyright considerations or due to § 300aa-12(d)(4)(A). To access this electronic version of the Austism Master File, visit this court's website at www.uscfc.uscourts.gov. Select the Vaccine Claims" page, then the "Austism Proceedings" page.

rejected. I issued the decision in *Cedillo v. HHS*, No. 98-916V, 2009 WL 331968 (Fed. Cl. Spec. Mstr. Feb. 12, 2009). Special Master Patricia Campbell-Smith issued the decision in *Hazlehurst v. HHS*, No. 03-654V, 2009 WL 332306 (Fed. Cl. Spec. Mstr. Feb. 12, 2009). Special Master Denise Vowell issued the decision in *Snyder v. HHS*, No. 01-162V, 2009 WL 332044 (Fed. Cl. Spec. Mstr. Feb. 12, 2009).

Each of those three decisions was later affirmed in three different rulings, by three different judges of the U.S. Court of Federal Claims. *Hazlehurst v. HHS*, 88 Fed. Cl. 473 (2009); *Snyder v. HHS*, 88 Fed. Cl. 706 (2009); *Cedillo v. HHS*, 89 Fed. Cl. 158 (2009). Two of those three rulings were then appealed to the U.S. Court of Appeals for the Federal Circuit, again resulting in affirmances of the decisions denying the petitioners' claims. *Hazlehurst v. HHS*, 604 F. 3d 1343 (Fed. Cir. 2010); *Cedillo v. HHS*, 617 F. 3d 1328 (Fed. Cir. 2010).

On March 12, 2010, the same three special masters issued decisions concerning three separate "test cases" pertaining to the petitioners PSC's *second* causation theory. Again, the petitioners' causation theories were rejected in all three cases. *King v. HHS*, No. 03-584V, 2010 WL 892296 (Fed.Cl.Spec.Mstr. Mar. 12, 2010); *Mead v. HHS*, No. 03-215V, 2010 WL 892248 (Fed.Cl.Spec.Mstr. Mar. 12, 2010); *Dwyer v. HHS*, No. 03-1202V, 2010 WL 892250 (Fed.Cl.Spec.Mstr. Mar.12, 2010). None of the petitioners elected to seek review any of those three decisions.

## II

## PROCEDURAL HISTORY OF THIS CASE

On February 21, 2003, Petitioner filed a "Short-Form Autism for Vaccine Compensation," on behalf of her son, MDP, under the Vaccine Act. By filing a Short-Form Autism Petition for Vaccine Compensation, the Petitioner, in effect, alleged that as a result of one or more vaccinations covered under the Program, MDP developed a neurological disorder, consisting of an Autism Spectrum Disorder or similar disorder, and that such disorder was caused by measles-mumps-rubella (MMR) vaccination; by the "thimerosal" ingredient in certain Diphtheria-Tetaneus-Pertussis (DTP), Dipheria-Tetanus-acellular Pertussis (DTaP), Hepatitis B, and Hemophilus Influenza Type B (HIB) vaccinations; or by some combination of the two. (*Autism General Order* #1, 2002 WL 3169785*8 (Fed. Cl. Spec. Mstr., July 3, 2002).) The petition provided no specific details regarding the nature of the alleged vaccine-related injury to MDP.

On May 19, 2003, Respondent filed a report indicating that the record to date was deficient. After that, proceedings in this case were deferred pending the outcome of the OAP "test cases." The proceedings in this case resumed in 2008 upon completion of the OAP test case trials.

On November 14, 2008, I ordered Petitioner to file certain medical records, and directed Respondent to file a statement regarding the appropriateness of further processing this claim in the OAP. In response, Petitioner filed various medical records on January 23, 2009.

On March 6, 2009, Respondent filed a Motion to Dismiss, contending that based on the record, Petitioner's claim was filed more than 15 months after the expiration of the statute of limitations. ("R. Mot. to Dismiss")

On July 7, 2009, I ordered Petitioner to file a response to Respondent's Motion to Dismiss. On August 6, 2009, Petitioner filed a Response to Respondent's Motion to Dismiss, contending that the statute of limitations did not begin to run until MDP received a *confirmed diagnosis* of autism. ("Pet. Resp. to Mot. To Dismiss,"p. 7.)

On December 2, 2010, I ordered Petitioner to provide a statement identifying her theory of how MDP's vaccines caused his autism. Petitioner filed a "Response with Theory," describing her theory of vaccine causation, on January 3, 2011. On February 17, 2011, Petitioner submitted additional exhibits consisting of medical records and academic articles, as well as a "Response" describing how those documents allegedly support vaccine causation in this case.

On March 10, 2011, I filed an Order indicating that I would not rule on Respondent's Motion to Dismiss until after the resolution of the appeal in *Cloer v. HHS*, 654 F.3d 1322 (Fed. Cir. 2011), concerning the Vaccine Act's statute of limitations. On August 5, 2011 the U.S. Court of Appeals for the Federal Circuit issued an *en banc* ruling on the timely filing issue. *Cloer*, 654 F.3d 1322. On August 31, 2012, I issued an Order, indicating that in light of the *en banc* decision in *Cloer*, petitioner would have 30 days to file any additional arguments concerning the timeliness of her Petition. Petitioner did not offer any additional arguments.

### III

### FACTUAL HISTORY

MDP and his twin brother were born on August 22, 1996. (Ex.[4] 39.) On October 24, 1996, both twins received the combination of DTP/ Hib vaccinations at Decatur General Hospital. (Ex. 9.) Petitioner asserts that after MDP and his brother received those vaccinations, both children began to cry and "continued to do so with high pitch screaming for several hours thereafter." (Pet. Resp. to Mot. to Dismiss at 2.) Petitioner avers that, as instructed by the post-immunization handouts, she gave MDP and his brother Tylenol to sooth their discomfort, and both children slept through the night. (Ex. 12 at 2; Pet. Resp. to Mot. to Dismiss at 2.) MDP continued his routine childhood vaccinations, receiving combination DTP/Hib vaccinations on December 19, 1996, and February 27, 1996, followed by DTaP and MMR vaccinations on September 4, 1997. (Ex. 11.)

The medical records also note that Matthew "stopped babbling at thirteen months of age and engaged in no more expressive language." (Pet. Ex. 7 at 1.) At approximately fifteen months of age Matthew began receiving early intervention services. (*Id.* at 2.) Matthew was "not talking" at eighteen months of age, and was enrolled in speech, occupational, physical and play therapies. (Pet. Ex. 16 at 7.)

---

[4] I will refer to Petitioner's exhibits as "Ex." Petitioner filed medical records consisting of Exhibits 1-39 on January 23, 2009. On August 6, 2009, Petitioner filed Exhibit 40, a home video. Petitioner filed additional medical records as Exhibits 41-78 on February 17, 2011.

Petitioner has stated that after attending a conference in Nashville in November 1999, she realized that vaccines might be the cause of the symptoms exhibited by both MDP and his twin. (Pet. Resp. to Mot. to Dismiss at 4.) Thereafter, Petitioner avers, she contacted an attorney who informed her that she needed to obtain a formal diagnosis prior to filing a Petition for Vaccine Compensation. (*Id.* at 5.)

On November 4, 1999, Dr. Dukes referred MDP to child neurologist  Dr. Jan Mathisen for evaluation of "[p]oss[ible]autism." (Ex. 3 at 5.) On January 27, 2000, Dr. Mathisen concluded that MDP had "evidence of autistic features." (Ex. 3 at 1.) At Petitioner's request, Dr. Mathisen also conducted a follow-up MRI, Amino Acid testing, Fragile X testing, and chromosome testing to confirm the autism finding. (Ex. 4 at 1.) On March 1, 2000, Dr. Mathisen saw MDP "for follow-up of his autism." (Ex. 4 at 1.) Dr. Mathisen reported that MDP's MRI and Amino Acid Test results were negative, and "that everything appears to be going fairly well with [MDP]." (*Id.*) Petitioner avers it was at this visit that she was also provided "a medical diagnosis that confirmed my children suffered*** [from] autism." (Pet. Resp. to Mot. to Dismiss at 6 .)

## IV

## LEGAL STANDARD

The Vaccine Act provides that:

> a vaccine set forth in the Vaccine Injury Table which is administered after October 1, 1988, if a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury after the **expiration of 36 months** after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury…

§ 300aa-16(a)(2) (emphasis added).  In *Cloer v. HHS*, the Court of Appeals for the Federal Circuit affirmed that the statute of limitations begins to run on a specific statutory date: the date of occurrence of the first symptom or manifestation of onset of the vaccine-related injury recognized as such by the medical profession at large." 654 F.3d at 1322, 1325 (Fed. Cir. 2011). This date is dependent on when the first sign or symptom of injury appears, not when a petitioner discovers a causal relationship between the vaccine and the injury. (*Id.* at 1335).

## V

## ANALYSIS OF THIS CASE

On February 21, 2003, Petitioner filed a Short-Form Autism Petition for Vaccine Compensation on behalf of MDP. Accordingly for this case to be timely filed within the Vaccine Act's statute of limitations, the first symptoms of MDP's ASD must have occurred no earlier than February 21, 2000.

After Petitioner filed MDP's medical records, the Respondent filed Respondent's Motion to Dismiss, asserting that MDP was "formally diagnosed with autism by neurologist Jan E. Mathisen, M.D., on January 27, 2000." (R. Mot. To Dismiss at 3.) In response, Petitioner appeared to argue that the statute of limitations period should not begin until after MDP ha a

confirmed diagnosis of autism, because doctors were not able to confirm MDP's condition until March 1, 2000.[5] (Pet. Resp. to Mot. to Dismiss at 7.)

The U.S. Court of Appeals for the Federal Circuit has repeatedly held that the statute of limitations does not begin to accrue at the time of the diagnosis of the vaccine-related injury, but at the time when the *first symptom or manifestation of onset occurs*.[6] See *Carson ex rel. Carson v. HHS*, 727 F.3d 1365, 1369 (Fed. Cir. 2013); *Cloer v. HHS*, 654 F. 3d 1322, 1329 (Fed. Cir. 2011); *Markovich v. HHS*, 477 F.3d 1353, 1357 (Fed. Cir. 2007). In this case, I find that on January 27, 2000, Dr. Mathisen determined that MDP was suffering from ASD, when that physician noted that "[MDP] [had] evidence of autistic features," and wrote "Impression: Autism." (Ex. 3 at 1,4.) Since MDP was suffering from ASD on January 27, 2000, it follows inevitably that MDP's first symptom or manifestation of onset on his ASD occurred *prior* to his visit with Dr. Mathisen on January 27, 2000.

In short, it is clear that MDP's first symptoms of ASD appeared at some point before January 27, 2000, the date on which he was diagnosed. Thus, MDP's first symptoms and his manifestation of onset occurred earlier than February 21, 2000. Accordingly, Petitioner's claim is time-barred.

## VI

## CONCLUSION

I have great sympathy for the tragic disorder from which MDP suffers. Under the applicable law, however, Petitioner has the burden to show timely filing. Petitioner has failed to do so. There is preponderant evidence that this case was not filed within "36 months after the date of occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury" as required by Vaccine Act, § 16(a)(2). **Therefore, this claim is dismissed as untimely filed under the Vaccine Act's statute of limitations. § 16(a)(2). The clerk is directed to enter judgment accordingly.**

---

[5] In her Response to the Motion to Dismiss, Petitioner indicated that MDP's autism diagnosis was confirmed on March 3, 2000, but Petitioner later clarified the date of MDP's diagnosis confirmation to be March 1, 2000 in her subsequent "Response with Theory." (Pet. Resp. to Mot. to Dismiss, ECF No. 17 at 6; Response, ECF No. 21 at 15.) I accept that Petitioner intended to assert that MDP's diagnosis was confirmed on March 1, 2000, not March 3, 2000, since the former date corresponds with the medical records. (Ex. 4.)

[6] I have sympathy for Petitioner that she may have received faulty legal advice as to when to file a petition with this court, but under applicable law, this cannot negate Petitioner's burden to demonstrate timely filing.

**IT IS SO ORDERED.**

George L. Hastings
Special Master